### THE HUSTLER.

(District Court, D. Connecticut.   March 5, 1900.)

#### No. 1,226.

COLLISION—STEAM VESSELS CROSSING—STARBOARD-HAND RULE.

A steam tug *held* in fault for a collision with a steam yacht, the two vessels being on crossing courses, because of her failure to observe the starboard-hand rule; and the yacht to have been justified, under the same rule, in keeping her course and speed.

This was a proceeding by the Merritt & Chapman Derrick & Wrecking Company, owners of the steam tug Hustler, for limitation of liability for damages on account of collision.

Samuel Park and Avery F. Cushman, for petitioner.

R. D. Benedict, for claimant.

TOWNSEND, District Judge.   Petition for limitation of liability. On July 7, 1899, shortly after 6 o'clock in the afternoon, the steam yacht Fra Diavolo came up the bay of New York, intending to land at the Battery, and, being prevented from so doing, had started to go up the North river to pier 6, when the large Sound steamship New

Hampshire, going down, passed her about 100 feet away, and the wrecking tug Hustler, coming across from the Pennsylvania Railroad docks, and bound for the East river, struck her about amidships on her port side, and sank her at a point about opposite pier 6 and some 300 feet therefrom. It was broad daylight, clear weather, and flood tide. The Hustler's speed over the land was about 7½ miles; that of the yacht, some 12 miles. Upon the original admission of West, pilot of the Hustler, that the yacht, when first seen, bore one point on his starboard bow, supported by the probabilities in view of the respective destinations of the boats, and on the testimony of several witnesses that at said time the Hustler bore about three points on the yacht's port bow, and upon the admissions in the answer, I find that the yacht, when first seen, was not heading for the tug, but that the tug was on the port bow of the yacht, which was headed up river with wheel ported, drawing in slightly towards the New York shore, but practically keeping its course. I hold, therefore, that it was the duty of the yacht, under articles 19 and 21, to "keep her course and speed," and to assume that the tug, having the yacht on her starboard side, would keep out of the way. The Hustler had starboarded her wheel, so as to pass under the stern of the New Hampshire. When the boats sighted each other, there was an exchange of cross signals; the yacht blowing one and the Hustler two whistles. Afterwards, the yacht again blew one, and the Hustler again blew two whistles. The Hustler kept her speed and starboarded her wheel.

Counsel for petitioner contends that the starboard-hand rule does not apply because there was no danger of collision if the yacht had kept her course. I find, as aforesaid, that the yacht did practically keep her course, because, during the half minute or minute between the time when the boats sighted each other and the collision, Dennis says the boat did not go any nearer to the New York shore, McNutt says she was on a straight course, Smith says he kept his course, and Burke and Hull say she did not change her course; and their further testimony that the New Hampshire, going down, passed on a parallel course, and as to the distances at which the yacht passed the various piers, supported by that of the divers as to where they found the wreck of the yacht, and by the proof as to destination, furnish a preponderance of testimony that there was no material change of the yacht's course, or no change which would justify the course of the Hustler, or which materially affected the result. Even though the yacht did slightly draw towards the shore, or did keep her speed, and did not stop and reverse,—also claimed as negligence,—it is immaterial, because she had the right of way, and in a clear harbor was speeding away from the Hustler. The petitioner's allegation of insufficient lookout on the yacht is immaterial because it appears, even if true, that it could not have contributed to the disaster. The witnesses on the yacht say they saw the Hustler as soon as the New Hampshire passed, and the interchange of whistles shows a sufficient knowledge on both sides.

A decree may be entered for limitation of liability, allowance of claim against proceeds, and for reference back to commissioner.